PHILIP RAFFERTY, RECEIVER OF THE CATARACT CITY BANK, v. THE BANK OF JERSEY CITY.

1. On the 28th of October, 1856, Charles Sanford, as owner of two thousand nine hundred and sixty-five shares, and seven other persons, as his associates, each owning five shares, filed and had recorded in the office of the secretary of state, as provided in the tenth section of the act to authorize the business of banking (*Nix. Dig.* 59) a certificate stating, among other things, that the association should continue twenty years, and with a capital of twenty thousand dollars, and that

Rafferty, Receiver, &c., v. Bank of Jersey City.

Sanford had been appointed president. *Held*—That by this they were constituted a corporation, under the seventeenth section of the act above recited.

2. The bank, after doing business some four years, failed, having many creditors, and owing to the Bank of Jersey City a considerable amount. Part of the assets were applied in satisfaction of this claim, and received by the Jersey City Bank after full knowledge of the failure. While in operation, the defendants dealt with it for a considerable length of time, as a bank. *Held*—That in a suit brought by a receiver appointed under the act to prevent frauds by incorporated companies, (*Nix. Dig.* 371) to recover the assets thus applied, the Jersey City Bank was estopped from setting up, by way of defence, that the Cataract City Bank was not a proper corporation, that no directors had ever been chosen, and that the assets belonged to the stockholders individually, as their private property, and not to the corporation.

3. The verdict, being for a larger amount than the sum actually due, must be set aside, unless the plaintiff shall agree to a proper deduction during the term.

---

In case. On rule to show cause why verdict for the plaintiff should not be set aside.

Two grounds were relied on for setting aside the verdict:

1. That the suit could not be sustained by the plaintiff, as receiver of the Cataract City Bank, the same not being, and never having been, a lawful corporation; and

2. That the verdict was for a greater sum than the amount due.

The case was argued before BEASLEY, C. J., and Justices BEDLE, DALRIMPLE, and DEPUE.

In support of the rule, *S. B. Ransom.*

Contra, *Wm. Gledhill.*

BEDLE, J. The plaintiff, the receiver, was appointed by the Court of Chancery, and as such brought this suit under the second section of the act to prevent frauds by incorporated companies, (*Nix. Dig.* 371*) to recover the amount of certain assets obtained by the Jersey City Bank from the

---

* *Rev.*, p. 189, § 70.

president of the Cataract City Bank, after it had become insolvent, and after knowledge of such insolvency by the Jersey City Bank. The two banks had dealings with each other in exchanges and mutual collections, and when such assets were obtained, the Cataract City Bank was indebted to the Jersey City Bank in the full amount thereof. The assets were delivered by the president of the Cataract City Bank to the president of the Jersey City Bank, at the banking-house of the former bank, in Paterson ; and the evidence is clear that the insolvency of that bank was known to the president of the Jersey City Bank at the time. It is urged that this suit cannot be maintained, because the Cataract City Bank was not an incorporation, and that this transaction should be treated as the individual act of the president, or the act of the individuals interested in the bank. The president, as the owner of two thousand nine hundred and sixty-five shares, with seven others, as owners of five shares each, filed and recorded a certificate in the office of the secretary of state, on the 28th of October, 1856, as provided in the sixteenth section of the act to authorize the business of banking, (Nix. Dig. 59) and expressing that the association should continue for twenty years from the date of the certificate. The capital stock was fifty thousand dollars. The certificate stated that Charles Sanford had been appointed president. Upon the strength of the filing of this certificate, the association, without electing a board of directors, proceeded to the business of banking, Mr. Sanford being the manager of the bank. After about four years of business in that way—as would naturally be expected before that time—the bank failed, with many creditors unpaid. The bill in chancery was filed for their benefit; and in answer to the objection that it was not an incorporation, it is only necessary to refer to the seventeenth section of the act to authorize the business of banking. That provides that " upon making said certificate, and causing the same to be recorded as aforesaid, the said persons so associating, their successors and assigns, shall be, from the time of commencement fixed

in said certificate, and until the time limited therein for the termination thereof, a body corporate and politic," &c. This language clearly establishes the corporate existence of the bank, on filing and recording the certificate, from the time of commencement fixed in the certificate, and the period fixed in this certificate was twenty years from its date. The date, it is true, is five days before the actual filing and recording; but the corporate existence of this bank would commence from the filing and recording. The eighteenth section of the same act provides that such association shall have power to choose a board of directors, and under their direction to carry on the business of banking, by discounting bills, notes, and other evidences of debt, receiving deposits, &c. There were but eight stockholders, Sanford being the holder of all the stock, excepting the nominal amounts held by the others, and he claiming that the stockholders were all directors for the first year, and the certificate containing a statement that they, the stockholders, had appointed Sanford president. The association, under this color, commenced and continued the business of banking until their failure; and because no board of directors was regularly elected, the defendants seek to have the assets in question treated as the individual assets of the president, or those interested in the bank, and in that way be relieved from the consequences of obtaining assets of an insolvent corporation, after notice of its insolvency. The answer to that is, that although the assets were irregularly acquired by the corporation, yet that it was a corporation, and they were its property at the time of the failure; that the defendants had, for a considerable length of time, dealt with that bank, as a bank—not with the president or the stockholders, individually; that there were other creditors who had dealt in the same way; that these assets were obtained by the defendants of the bank on account of the balance due from the bank; and, as against the receiver, who represents all the creditors, the defendants are estopped from now appropriating them so as to secure their own claim, to the detriment of others equally entitled to share in the assets of

an insolvent corporation. Whatever question may arise as to the liability of the stockholders individually, that is not to be settled in this suit. That the corporation irregularly acquired assets does not, as against the creditors, authorize the stockholders to treat them as their own private property or one creditor to compel them to so treat them to his advantage, and the detriment of others as well entitled as himself.

The remaining question is, as to the amount of the verdict. Without going into details, it is sufficient to say that the verdict is too large by four hundred and fourteen dollars and fifty-three cents—the amount of two shares of one hundred and seventy-two dollars and thirty-seven cents, and one hundred and fifteen dollars, besides interest for seven years and four and a half months, making the amount stated, four hundred and fourteen dollars and fifty-three cents. If the plaintiff remits that amount, as he has signified his willingness to do, during the term, the verdict may stand for the balance; otherwise be set aside, and a new trial granted.

BEASLEY, C. J., and Justices DALRIMPLE and DEPUE, concurred.